UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| REZA SHERKAT, individually and as guardian of SHAHRAM SHERKAT, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 15-cv-11074-IT |
| NEW ENGLAND VILLAGE, INC., at al. | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

December 8, 2015

TALWANI, D.J.

I.  Introduction

    Plaintiff Reza Sherkat ("Sherkat"), on his own behalf and as guardian of Shahram

Sherkat ("Shahram"), brings this action alleging discrimination against Shahram and harm to

both Sherkat and Shahram when Defendants refused to admit Shahram into a facility run by New

England Village, Inc. ("NEV" or "New England Village"), a corporate provider of residential

and community-based services for intellectually disabled people that contracts with the

Massachusetts Department of Developmental Services ("DDS").  Presently before the court are

New England Village Defendants' Fed. R. Civ. P. 12(b)(6) [Amended] Motion to Dismiss [#12][1]

and the Motion to Dismiss by Defendants Elin Howe and Edward Fitzgerald [#13].  For the

reasons set forth below, Defendants' motions are ALLOWED.

---

[1] The NEV Defendants are New England Village, Gail T. Brown, Ginger Sullivan, and Rui
Carreiro.

II.  Factual Background as Alleged in the Verified Complaint

a.  *New England Village and Care for the Intellectually Disabled in Massachusetts*

Funding for care in group homes is a part of Massachusetts's public provision of care for the intellectually disabled.  Id. ¶ 21-50.  Massachusetts began operating a publically funded facility for people with intellectual disabilities in 1850, and later it made extensive use of state-operated group homes for their care.  Id. ¶ 22, 26.  Recently, Massachusetts has been contracting with corporate operators to provide this care alongside the state-run facilities, and in 2015 the budget from DDS for these corporate-operated group homes is more than four times the budget for state-run homes.  Id. ¶¶40, 43.  Officials from such group homes "maintain close, regular, and pervasive contact with DDS officials," especially DDS Area Directors, "who have the ability to direct Commonwealth funding to particular corporate operators."  Id. ¶ 52.  For example, the Area Directors prepare "referral packages" for individuals who are eligible for services and provide the packages to officials of the private operators as a means of facilitating admission to these facilities.  Id. ¶ 53.  "In practice, DDS Area Directors have nearly plenary power in deciding where DDS eligible people are placed."  Id. ¶ 55.

Defendant New England Village receives more than ninety-two percent of its revenue from Massachusetts through DDS, including funds from the Home and Community-Based Services Waiver ("HCBS Waiver"), which allows Medicaid funds to be used for private care of the intellectually disabled.  Verified Compl. ¶ 33, 41-44, 134.

b.  *Shahram's Denial of Admission to New England Village*

Sherkat is the guardian of his thirty-eight-year-old intellectually disabled son, Shahram.  Verified Compl. ¶¶ 1, 12 [#1].   Shahram needs assistance with most of his daily activities and requires twenty-four-hour care.  Verified Compl. ¶ 69.  In September 2012, Sherkat began

conversations with NEV representatives regarding a residential placement for Shahram.  Id. ¶¶ 1, 72.  During spring and summer of 2014, NEV officials encouraged Sherkat to prepare for Shahram's transition to New England Village and "indicated their full support" for Shahram's admission.  Id. ¶ 80.  Relying on this encouragement, Sherkat undertook expenses in preparation of the transition.  Id. ¶¶ 73-75.  Defendant DDS Area Director Edward Fitzgerald was in contact with the officials at New England Village, offering support for Shahram's admission and submitting a referral package to facilitate the admission.  Id. ¶ 57. 82.  Fitzgerald confirmed that Shahram's placement at New England Village would be fully funded on September 4, 2014.  Id. ¶ 92.  On September 11, 2014, Sherkat completed Shahram's application for a placement at NEV.  Id. ¶¶ 93-95.  According to its fall 2014 newsletter, New England Village admitted a new male resident August 14, 2014 and another September 22, 2014.  Id. ¶ 116.

On October 24, 2015, Defendants Ginger Sullivan and Rui Carreiro, Clinical Directors at NEV, informed Sherkat that new regulations from the DDS had forced New England Village to stop planning for new admissions.  Id. ¶¶ 99, 101.  Carreiro represented that these regulations barred Shahram's admission to New England Village.  Id. ¶ 102.  Sherkat had not been informed previously about any potential regulations that would preclude Shahram's admission.  Id. ¶ 107.  Carreiro also mentioned speaking with Defendant Gail T. Brown, NEV's executive director whose approval is required for the admission or denial of any person to New England Village, and that Brown advised Carreiro that New England Village would not be able to consider Shahram for admission.  Id. ¶¶ 104, 145.  New England Village indicated in other communications that Shahram was "eligible for services" at New England Village, but that there was no residential placement to offer.  Id. ¶ 123, 124.  Plaintiffs allege that the statements regarding the reasons for Shahram's denial were "false, pretextual, and calculated to deceive Mr.

Sherkat." Id. ¶ 108.  Plaintiffs do not allege the true reason for Shahram's denial.  The denial

caused Sherkat "grave emotional distress and symptomology, including but not limited to

insomnia, frequent headaches, lower back pain, poor concentration, and anhedonia." Id. ¶ 110.

On January 20, 2015, counsel for the DDS sent Plaintiffs' counsel a letter which stated

that the DDS had arranged for Plaintiffs to tour two intermediate care facilities and offered to

refer Shahram to two additional providers of residential and day services. Id. Ex. F.

III. Discussion

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the

plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006).  To survive dismissal,

a complaint must contain sufficient factual material "to 'state a claim to relief that is plausible on

its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 559 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to

relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal citations and

quotations omitted).  "A claim has facial plausibility when the pleaded factual content allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 663.

> a. *Count I: Title II of the Americans with Disabilities Act (against New England Village)*

Defendants move to dismiss Count I on the ground that New England Village is not a

"public entity" under the Title II of the ADA.  Title II provides that "no qualified individual with

a disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity." 42 U.S.C. § 12132.  To prevail on a Title II claim, Plaintiffs must show "(1) that [Shahram] is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability."  Buchanan v. Maine, 469 F.3d 158, 170-71 (1st Cir. 2006) (quoting Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000)).  A "public entity" includes any state or local government, or "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131.

The First Circuit has not yet spoken about whether a private contractor such as New England Village is an "instrumentality" of the state and therefore a "public entity."[2]  The vast majority of others courts, including all Circuit courts that have spoken on the issue, have held that a private contractor is not a "public entity" under the ADA.  See, e.g., Phillips v. Tiona, 508 F. App'x 737, 748 (10th Cir. 2013) (unpublished) (holding that the ADA does not apply to private prisons); Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010) (same); Green v. City of N.Y., 465 F.3d 65, 78-80 (2d Cir. 2006) (holding that a private hospital contracting with the City is not a public entity).  In so holding, the courts determined that the term "instrumentality of a State" in Title II is "best read as referring to a creature of a state or municipality."  See Green, 465 F.3d at 79.  Thus, even where a private entity contracts with the state to "perform a traditional and essential government function, it remains a private company, not a public entity."  Edison, 604 F.3d at 1310 (citing Green, 465 F.3d at 79).  This court agrees.

---

[2] A contractor like New England Village is clearly not a department, agency, or special purpose district of Massachusetts.

NEV, as a contractor with the DDS and not a creature of the state, is not a "public entity" for purposes of Title II.  Accordingly, Count I is dismissed.[3]

> ### b.  Count II: Section 1983 Claims (against New England Village, Brown, Sullivan, and Carreiro)

Plaintiffs assert a violation of the Fourteenth Amendment, the Rehabilitation Act, and the Medicaid Act.  They bring these claims under 42 U.S.C. § 1983 against the NEV Defendants, alleging that Shahram's denial of admission to NEV constituted a violation of these federal rights.  The NEV Defendants move to dismiss on the grounds that New England Village is not a "state actor" under Section 1983 and that Plaintiffs have not stated claims for the underlying rights.

> #### i.  State Action

42 U.S.C. § 1983 provides a private right of action for the deprivation of constitutional and statutory rights "under color of any statute, ordinance, regulation, custom, or usage, of any State."  See Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996).  While § 1983 is typically reserved for state actors, in some cases "private actors may align themselves so closely with either state action or state actors that the undertow pulls them inexorably into the grasp of § 1983."  Id. at 253-54.  "For [a private entity] to have acted under color of state law, their actions must be 'fairly attributable to the State.'  In other words, it must be fair to characterize them as state actors."  Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982)).

The First Circuit has articulated three primary tests to determine if a private entity can be characterized as a state actor for the purposes of § 1983: (1) the public function test, (2) the state compulsion test, (3) and the nexus/joint action test.  See, e.g., Estades-Negroni, 412 F.3d at 4-5;

---

[3] Plaintiffs also do not allege that New England Village denied Shahram the benefits of its program *because* of his disability, as required by Title II.

Logiodice v. Trs. of Me. Cent. Inst., 296 F.3d 22, 26 (1st Cir. 2002); Perkins v. Londonderry

Basketball Club, 196 F.3d 13, 18 (1st Cir. 1999).  The private entity need only satisfy one of the

tests to be deemed a state actor for the purposes of § 1983.  See Santiago v. Puerto Rico, 655

F.3d 61, 68 (1st Cir. 2011); Perkins, 196 F.3d at 18.  Here, Plaintiffs have argued that New

England Village is a state actor based on the public function test and the nexus/joint action test.

Pl. Reza Sherkat, M.D.'s, Opp'n New England Village Def.'s Mot. Dismiss at 6 [#15]

(hereinafter "NEV Opp'n").  For the reasons stated below, NEV is not a state actor for purposes

of Section 1983.[4]  Therefore, Count II is dismissed.

### 1. Public Function Test

Under the public function test, "[a] private party may become a state actor if he assumes

a traditional public function when performing the challenged conduct."  Santiago, 655 F.3d at 68.

"The exclusive function test is related to situations where a state tries to escape its

responsibilities by delegating them to private parties."  Rockwell v. Cape Cod Hosp., 26 F.3d

254, 258 (1st Cir. 1994).  Through this delegation, the actions of the private entity can be "fairly

attributed to the state."  See Lugar, 457 U.S. at 937.  Plaintiffs argue that New England Village

should be treated as a state actor because Massachusetts "has delegated performance of a

profoundly important state function—care of the intellectually disabled individuals such as

Shahram—to NEV and other corporate operators."  NEV Opp'n at 7.  Under the traditional

public function test, however, it is not enough to show that a private entity is performing an

important state function.  Rather, "[t]he plaintiff must show that the private entity assumed

---

[4] Plaintiffs rely heavily on Murphy v. Massachusetts Dep't of Developmental Servs., No. 3:13-CV-12839-MAP, 2014 WL 8508378 (D. Mass. Dec. 4, 2014) (Hennessy, M.J.), adopted in relevant part, No. 13-CV-12839-MAP, 2015 WL 1565572 (D. Mass. Apr. 8, 2015) (Ponsor, D.J.).  Judge Hennessy found that, for the purposes of a Rule 12(b)(6) motion to dismiss, a group home for the intellectually disabled that contracted with the DDS was a state actor.  Id.  Although this court takes note of Murphy, First Circuit precedent compels this court's ruling that New England Village is not a state actor.

powers traditionally *exclusively* reserved to the State." <u>Rockwell</u>, 26 F.3d at 258 (internal

quotation marks omitted).  "Exclusivity is an important qualifier, and its presence severely limits

the range of eligible activities." <u>Santiago</u>, 655 F.3d at 69.  In fact, "[w]hile many functions have

been traditionally performed by governments, very few have been 'exclusively reserved to the

State.'" <u>Flagg Bros. v. Brooks</u>, 436 U.S. 149, 158 (1978).  <u>See also</u> <u>Logiodice</u>, 296 F.3d at 26

(deciding that providing schooling, including high school education, is not an exclusive public

function).

Determining whether a state function is exclusive "is based on historical practice (as

opposed to a normative judgment)." <u>Logiodice</u>, 296 F.3d at 26.  In an attempt to show that care

for the intellectually disabled is an exclusive state function, Plaintiffs include a historical

narrative of Massachusetts's provisions of such care over the last two centuries.  Verified Compl.

¶¶ 21-25.  This narrative asserts that the state historically has had a role in care for the

intellectually disabled, but it does not suggest that this role was exclusive.

The First Circuit has held that "caring for the mentally ill . . . has historically been a

predominantly private function, in which regulation and involvement by the state is a recent

phenomenon." <u>Rockwell</u>, 26 F.3d at 259-60 (holding that involuntary treatment of the mentally

ill in Massachusetts is not an exclusive public function and that historically families provided for

the care of mentally ill people).  <u>See also</u> <u>Estades-Negroni</u>, 412 F.3d at 8-9 (holding that

involuntary treatment and provision of medical and psychiatric services in Puerto Rico is not an

exclusive public function).  Plaintiffs argue that this history does not address care for the

intellectually disabled, as opposed to care for the mentally ill, in Massachusetts.  But Plaintiffs

offer no facts suggesting that the care of intellectually disabled individuals involved greater state

action historically than the care of the mentally ill, and common sense and case law in a

neighboring jurisdiction would suggest the opposite conclusion. See Sybalski v. Indep. Grp. Home Living Program, 546 F.3d 255, 259-60 (2d Cir. 2008) (unable to conclude, based on the historical record in New York state, "that care of the mentally ill, much less the mentally disabled, was a function 'traditionally' and 'exclusively' reserved by the state").

### 2. Nexus/Joint Action Test

"The nexus/joint action test provides that a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'" Estades-Negroni, 412 F.3d at 5 (alterations in original) (quoting Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999)). Unlike the state compulsion test, the nexus/joint action test "ousts the challenged conduct from center stage and concentrates instead on the nature of the overall relationship between the State and the private entity." Perkins, 196 F.3d at 21.

Sherkat argues that the pervasive relationship between Massachusetts and New England Village, including the allegation that NEV receives ninety-two percent of its revenue from Massachusetts, meets the nexus/joint action test. NEV Opp'n at 9. "To pass [the nexus/joint action] test, a plaintiff must show that the private party's actions are attributable to the state through a symbiotic relationship between the two. The requisite nexus is premised on a showing of mutual interdependence." Santiago, 655 F.3d at 71 (citing Estades-Negroni, 412 F.3d at 5). "The most salient factor in this determination is the extent to which the private entity is (or is not) independent in the conduct of its day-to-day affairs." Santiago, 655 F.3d at 71 (internal quotation marks and citations omitted). Two other factors that may "weigh in the balance" are

"[a] private party's use of public facilities" and "the state's sharing of profits generated from the private party's rights-depriving conduct." <u>Id.</u>

Despite allegations that officials at DDS have regular contact with New England Village, grant funding to New England Village, and have "nearly plenary power in deciding where DDS eligible people are placed," the alleged facts do not support an inference that the day-to-day operations of New England Village are dependent on state actors. Verified Compl. ¶¶ 51-55. Plaintiffs allege only that DDS has influence over the placements of individuals at New England Village, and these allegations alone are insufficient for a finding of dependence in day-to-day operations. <u>Id.</u> The Verified Complaint also does not include allegations that New England Village uses public facilities or that it shares any of its profits with DDS, let alone shared profits from denying Shahram's application.

Sherkat's allegation that ninety-two percent of NEV's revenue comes from Massachusetts is also ineffective to demonstrate joint action. It is well established that "[a] private party cannot be transformed into a state actor simply because it is paid with government funds for providing a service." <u>Santiago</u>, 655 F.3d at 72 (holding that a private bus company was not a state actor despite its exclusive contract to provide students transportation to and from public schools); <u>see, e.g.</u>, <u>Rendall-Baker v. Kohn</u>, 457 U.S. 830, 832, 841 (1982) (holding that a private school for high school students with behavioral problems and special needs that received ninety percent of its budget from public funds was not a state actor liable under Section 1983); <u>Rockwell</u>, 26 F.3d 258 (holding that "[extensive] government regulation" and "the receipt of federal funds, such as Medicare [and] Medicaid . . . are insufficient to establish that [an] entity acted under color of state law"). For those reasons, New England Village is not a state actor under the nexus/joint action test.

*ii.   Underlying Causes of Action*

Even if this court were to decide that Plaintiffs sufficiently allege at this stage that New England Village is a state actor, the court would nevertheless dismiss Count II because Plaintiffs did not state claims for the underlying federal violations.

*1.   Medicaid Act*

Under 42 U.S.C. § 1396n(c)(2)(C) of the Medicaid Act, persons "likely to require the level of care provided in a hospital, nursing facility, or intermediate care facility for the [intellectually disabled] are [to be] informed of the feasible alternatives, if available under the [HCBS] waiver, at the choice of such individuals, to the provision of inpatient hospital services, nursing facility services, or services in an intermediate care facility for the" intellectually disabled.  Plaintiffs argue that Defendants' failure to admit Shahram violates Shahram's right to "residential choice" under the Medicaid Act.  NEV Opp'n at 12.  However, this subsection "does not *make* any particular option 'available,' to anyone.  It just requires the provision of information about options that *are* available."  Bertrand ex rel. Bertrand v. Maram, 495 F.3d 452, 459 (7th Cir. 2007) (emphasis in original).  Here, Shahram received what he was due under Section 1396n, as the DDS informed Sherkat of the option of Shahram receiving care at two intermediate care facilities (and even set up tours of those facilities) or at two other facilities with residential and day services.  Verified Compl. Ex. F.  For that reason, Plaintiffs did not state a claim for a violation of the Medicaid Act.

*2.   Rehabilitation Act*

To state a claim for a violation of Section 504 of the Rehabilitation Act, a plaintiff must prove (1) he is a disabled person under the Rehabilitation Act; (2) he is "otherwise qualified" for the program; (3) he is excluded from participation in or denied the benefits of the program solely

because of his disability; and (4) the program or special service receives federal funding.  See 29 U.S.C. § 794(a).

Plaintiffs state that NEV Defendants' reasons for denying Shahram's admission to NEV were "false, pretextual, and calculated to deceive Dr. Sherkat as to the true reasons for the denial of Shahram's admission."  Verified Compl. ¶ 108.  However, Plaintiffs do not allege that NEV Defendants denied admission to Shahram *because* of his disability.  Instead, they plead only that NEV Defendants "acted to exclude Shahram, a qualified individual with a disability," from participation in NEV's services.  Id. ¶ 154.  Plaintiffs have therefore failed to allege an essential element of a Rehabilitation Act claim.  See Leary v. Dalton, 58 F.3d 748, 752 (1st Cir. 1995) ("Section 504 . . . continues to require showing that the plaintiff's disability was the *sole* reason for the defendant's adverse action.") (emphasis in original).  For that reason, Plaintiffs failed to state a claim for a violation of the Rehabilitation Act.

### 3.  Fourteenth Amendment (Equal Protection)[5]

The Equal Protection Clause "prohibits a state from treating similarly situated persons differently because of their classification in a particular group."  Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 105-06 (1st Cir. 2015).  To survive a motion to dismiss, Plaintiffs "must allege facts plausibly demonstrating that compared with others similarly situated," Shahram was "selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure" Shahram.  Id. at 106 (internal quotation omitted).  Because Shahram is not a member of a

---

[5] Although Plaintiffs assert a violation of the "14th Amendment" as a whole and quote the entirety of Section One of the Fourteenth Amendment in their Verified Complaint, they do not appear to be making a claim based on due process.

protected class,[6] Plaintiffs put forth a "class of one" claim, arguing that Shahram was unfavorably singled out for denial from admission to NEV.  To make out a "class of one" claim, they must show that Shahram was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).  Further, they must demonstrate "bad faith or malicious intent to injure."  Rubinovitz v. Rogato, 60 F.3d 906, 911 (1st Cir. 1995).  To show this, Plaintiffs must allege a "gross abuse of power, invidious discrimination or fundamentally unfair procedures."  Baker v. Coxe, 230 F.3d 470, 474 (1st Cir. 2000) (internal quotation marks omitted).  The "malice/bad faith standard should be scrupulously met."  Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen of Town of Randolph, 932 F.2d 89, 94 (1st Cir. 1991) (internal quotation marks omitted).

Assuming, for purposes of a 12(b)(6) motion, that Plaintiffs have shown that Shahram and others admitted to New England Village are similarly situated, they nevertheless fail to state a claim.  Plaintiffs fail to plead facts sufficient to show that Defendants' actions were motivated by malice or bad faith.  At bottom, Plaintiffs allege that, by denying Shahram admission to New England Village and violating the law in doing so, NEV Defendants acted maliciously or with intent to injure.  However, "the mere fact that [NEV Defendants] may have violated or abused federal or state regulatory regimes . . . has no direct bearing on whether" Defendants violated Plaintiffs' Equal Protection rights.  Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortgage Fin. Corp., 246 F.3d 1, 10-11 (1st Cir. 2000).  Plaintiffs allege no additional facts to show bad faith or intent to injure.  Cf. SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 35 (1st Cir.

---

[6] Disability is not a suspect class for equal protection purposes.  See Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 442 (1985); Toledo v. Sanchez, 454 F.3d 24, 33 (1st Cir. 2006).

2008) (plaintiffs stated malice/bad faith based on showing of email evidencing defendants' intent to injure plaintiffs).

>    c.   *Counts III: Negligent Infliction of Emotional Distress (against NEV Defendants)*

NEV Defendants move to dismiss Sherkat's (on his own behalf only) claim of negligent infliction of emotional distress on various grounds, including that they owed no duty to Sherkat. Before liability for negligence can be imposed, "there must first be a legal duty owed by the [NEV Defendants to Sherkat], and a breach of that duty proximately resulting in the injury. Dos Santos v. Coleta, 987 N.E.2d 1187, 1192 (Mass. 2013) (internal quotation marks omitted). It is "fundamental that there must be a showing of a duty of care owed to" Sherkat because "there can be no negligence where there is no duty." Conley v. Romeri, 806 N.E.2d 933, 936 (Mass. App. Ct. 2004) (internal quotation marks omitted). Whether Defendants owed a duty of care to Sherkat "is a question of law for the court, to be determined by reference to existing social values and customs and appropriate social policy." O'Sullivan v. Shaw, 726 N.E.2d 951, 954 (Mass. 2000).

NEV Defendants owe no duty to Sherkat. Sherkat was at best a prospective contracting party to New England Village, and a "contracting party acting at arm's length does not owe a generalized tort-based duty to use care to another contracting party." Ethridge v. PNC Bank, N.A., No. 11-12256-GAO, 2012 WL 4023690, at *2 (D. Mass. Sept. 11, 2012). Therefore, Count III is dismissed.

>    d.   *Count IV: Negligence (against New England Village, Sullivan, and Carreiro)*

For the same reasons as expressed for Count III, NEV Defendants did not owe a duty to Sherkat. Therefore, Count IV is dismissed. [7]

---

[7] If Sherkat alleges that NEV Defendants were negligent in inducing Sherkat to make costly preparations to ready Shahram for admission to New England Village, this claim sounds in

### e. *Count V: Breach of Contract (against New England Village)*

In Count V, Plaintiffs allege that New England Village breached its contract with the DDS by violating Shahram's rights.  Defendants move to dismiss on the ground that Shahram does not have standing to enforce the contract.

Under Massachusetts law, enforcement of a contract by beneficiaries is limited to those who are *intended* beneficiaries.  Miller v. Mooney, 725 N.E.2d 545, 549-50 (Mass. 2000).  To "prevail on a third-party beneficiary claim, a plaintiff must establish that the 'language and circumstances of the contract show that the parties to the contract clearly and definitely intended the beneficiary to benefit from the promised performance.'"  Cooper v. Charter Commc'ns Entm'ts I, LLC, 760 F.3d 103, 109 (1st Cir. 2014) (quoting Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 918 N.E.2d 36, 44 (Mass. 2009)).  Third parties that "benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary."  Teixeira v. Fed. Nat'l Mortg. Ass'n, No. 10-11649-GAO, 2011 WL 3101811, at *2 (D. Mass. July 18, 2011) (quoting Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 1999)).  Therefore, "as a general proposition, public citizens are not intended third-party beneficiaries to government contracts despite the fact that such contracts are usually intended to benefit the public in some way."  Speleos v BAC Home Loans Servicing, 755 F. Supp. 2d 304, 310 (D. Mass. 2010).

Plaintiffs have not referred to, or even pled facts relating to, any specific contract language at all, let alone language that makes clear that Shahram is an intended beneficiary. They instead argue that, because the DDS-NEV contract is governed by Mass. Gen. Laws. ch. 19B § 13, which requires that DDS services be offered "without discrimination to all people who

---

negligent misrepresentation, not negligence alone, and would require allegations that Plaintiffs reasonably relied to their detriment on the misrepresentation.

are eligible," a person with Shahram's disability is a third party beneficiary.  Verified Compl.

¶ 217.  But, a contract with a government agency that merely incorporates legal obligations

imposed by a statute or a government program is not enforceable by a contract beneficiary who

has no private right of action to enforce the underlying statute or program.  Astra USA, Inc. v.

Santa Clary Cty., 563 U.S. 110, 117-21 (2011) (ruling that contract with federal agency did not

confer private right of action).  Plaintiffs have not pointed to any language in the statute that

shows that Shahram enjoys a private right of action to enforce Mass. Gen. Laws. ch. 19B.  For

that reason, Count V is dismissed.

> f.   *Count VI: Massachusetts Civil Rights Act (against Howe)*

Plaintiffs allege that Defendant Elin Howe, the Commissioner of DHS, violated the

MCRA by failing to take action to cause New England Village to admit Shahram.  Howe moves

to dismiss on the ground that Plaintiffs did not allege any threat, intimidation, or coercion as

required by the MCRA.  To state a claim under Mass. Gen. Laws ch. § 11I, Plaintiffs must allege

that their exercise of enjoyment of rights secured by the Constitution of either the United States

or Massachusetts has been interfered with and that the interference "was by threats, intimidation,

or coercion."  Bally v. Northeastern Univ., 532 N.E.2d 49, 51-52 (Mass. 1989) (citing Mass.

Gen. Laws ch. § 11H and noting that the Massachusetts Legislature did not "intend to create a

vast constitutional tort").  "The Massachusetts legislature intended that even a direct deprivation

of a plaintiff's rights would not be actionable under the act unless it were accomplished by means

of one of these three constraining elements."  Nolan v. CN8, 656 F.3d 71, 77 (1st Cir. 2011)

(internal quotation marks and citation omitted).  "'Threat' in this context involves the intentional

exertion of pressure to make another fearful or apprehensive of injury or harm."  Planned

Parenthood League of Mass., Inc. v. Blake, 631 N.E.2d 985, 990 (Mass. 1994).  "'Intimidation'

involves putting in fear for purpose of compelling or deterring conduct." Id. "Coercion" involves "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Id. (internal quotation marks omitted).

Because Plaintiffs do not state that Howe applied or threatened any physical act, they have not alleged that Howe has threatened or intimidated them. See Kennie v. Natural Res. Dep't of Dennis, 889 N.E.2d 936, 944 (Mass. 2008) (stating that "threats and intimidation often rely on an element of actual or threatened physical force"). Plaintiffs also fail to establish coercion because they do not allege that Howe "sought to persuade them to alter or to amend their plans to conform with conditions which [Howe] sought to impose illegally" on them. See Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 338 (Mass. 1996) (requiring such for "coercion"). To the extent that Plaintiffs complain about Howe's "deliberate refusal to enforce state law," Opp'n Mot. Dismiss Defs. Elin Howe Edward Fitzgerald, this is an allegation of a "direct violation" of Plaintiffs' rights, which, even if allegedly unlawful, is not alone sufficient to implicate the MCRA. Longval v. Comm'r of Correction, 535 N.E.2d 588, 593 (Mass. 1989). For those reasons, Count VI is dismissed.

> g. *Count VII: Injunctive Relief (against Howe and Fitzgerald)*

Defendants Howe and Fitzgerald move to dismiss Count VII, a cause of action for "Injunctive Relief," because it does not articulate a claim. "[I]njunctive relief is not a stand-alone cause of action under Massachusetts or federal law." Payton v. Wells Fargo Bank, N.A., No. 12-11540-DJC, 2013 WL 782601, at *6 (D. Mass. Feb. 28, 2013). See also Wentworth Precious Metals, LLC v. City of Everett, No. 11-10909-DPW, 2013 WL 441094, at *15 (D.

Mass. Feb. 4, 2013) (noting that an "injunction is a remedy not a claim."). Count VII does not state a stand-alone cause of action. For that reason, it is dismissed.

IV. <u>Conclusion</u>

For the foregoing reasons, <u>New England Village Defendants' Fed. R. Civ. P. 12(b)(6) [Amended] Motion to Dismiss</u> [#12] and the <u>Motion to Dismiss by Defendants Elin Howe and Edward Fitzgerald</u> [#13] are ALLOWED.

IT IS SO ORDERED.

December 8, 2015                                     /s/ Indira Talwani
                                                    United States District Judge